**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RHITA BERCY,

　　　　　*Plaintiff-Appellant*,

　v.

CITY OF PHOENIX,

　　　　　*Defendant-Appellee*.

ERIC M. HALEY,

　　　　　*Trustee-Appellee*,

No. 22-16463

D.C. No. 2:20-cv-
01948-SRB

OPINION

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted February 9, 2024
Phoenix, Arizona

Filed May 30, 2024

Before:  Marsha S. Berzon, Andrew D. Hurwitz, and
Anthony D. Johnstone, Circuit Judges.

Opinion by Judge Johnstone

# SUMMARY[*]

## Employment Discrimination / Bankruptcy

Affirming the district court's summary judgment in an employment discrimination action under Title VII and 42 U.S.C. § 1981, the panel held that the plaintiff's claim belonged to her bankruptcy estate, and only the bankruptcy trustee had standing to sue on the claim.

The plaintiff brought a hostile work environment claim against her employer, alleging a single course of conduct that continued over a period of nearly two years. She filed her bankruptcy petition within that two-year period. She thus sought damages on a claim for alleged harm arising from discriminatory conduct that occurred in part after she filed for bankruptcy. The parties correctly agreed that a claim based on conduct before the petition, and any damages resulting from that conduct, belonged to the bankruptcy estate. Because the plaintiff could have brought her claim at the time of her bankruptcy petition, and any subsequent damages were sufficiently rooted in prebankruptcy incidents, the panel held that the entire claim belonged to the bankruptcy estate under 11 U.S.C. § 541(a)(1).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Stephen Montoya (argued), Montoya Lucero & Pastor PA, Phoenix, Arizona, for Plaintiff-Appellant Rhita Bercy.

Catherine C. Burns (argued), BurnsBarton PLC, Phoenix, Arizona, for Defendant-Appellee City of Phoenix.

Stuart B. Rodgers, Lane & Nach PC, Phoenix, Arizona, for Trustee-Appellee Eric M. Haley.

**OPINION**

JOHNSTONE, Circuit Judge:

When a person files for bankruptcy, that debtor's property forms a bankruptcy estate out of which creditors may be paid. The estate includes all property interests, including claims that the debtor could have brought in a lawsuit before filing the bankruptcy petition. Ordinarily only the bankruptcy trustee may sue on behalf of the estate. So by filing for bankruptcy, the debtor loses standing to bring those claims. Bankruptcy leads to a discharge of debts, giving the debtor a "fresh start." That fresh start leaves the debtor both free of discharged debts and divested of the property taken into the bankruptcy estate, including any claims.

Rhita Bercy brought a hostile work environment claim against her employer, the City of Phoenix, alleging a single course of conduct that continued over a period of nearly two years. She filed her bankruptcy petition within that two-year period. The question here is whether Bercy can recover damages on that claim for alleged harm arising from discriminatory conduct that occurred after she filed for

bankruptcy. Because Bercy could have brought her claim at the time of her petition and any subsequent damages are sufficiently rooted in prebankruptcy incidents, we hold that the entire claim belongs to the bankruptcy estate, and only the bankruptcy trustee had standing to sue on the claim. We therefore affirm the district court's grant of summary judgment to the City.

## I.

Bercy worked in the City's Housing Department.[1] As early as 2016, a coworker began making offensive, bigoted remarks about Bercy's race and ethnicity. The coworker's harassment continued until Bercy changed departments in August 2018. Bercy reported her coworker's conduct to her supervisor twice, once in 2017 and again in April 2018.

On April 11, 2018, Bercy filed a Chapter 7 bankruptcy petition, *see* 11 U.S.C. § 701–784, seeking relief from her debt so she could leave her job and escape her coworker's harassment. When she filed the bankruptcy petition, she knew her coworker's conduct violated both the City's anti-discrimination policy and the law. Still, on the petition, Bercy answered "no" to whether she had "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment," including "employment disputes . . . or rights to sue." After Bercy petitioned, her coworker continued to make racist comments that included the use of a racial slur against her.

---

[1] Because we are reviewing the district court's grant of summary judgment for the City, "we recite the facts in the light most favorable to" Bercy. *Vu v. Prudential Prop. & Cas. Ins.*, 172 F.3d 725, 727 n.1 (9th Cir. 1999).

The bankruptcy court discharged her debts. Later, Bercy sued the City for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. She alleged that a hostile work environment began "in approximately 2017," and continued "throughout the time [Bercy's coworker] worked with Ms. Bercy in the City's Housing Department." The complaint described the harassment as "protracted [and] unabated" and "ongoing and constant" throughout 2017 and 2018.

During discovery in this case, the City learned for the first time that Bercy had filed for bankruptcy. The City then moved for summary judgment, arguing that Bercy's claim belonged to the bankruptcy estate and Bercy thus lacked standing to pursue it. After learning of Bercy's suit against the City, the bankruptcy trustee successfully moved to reopen the bankruptcy case. The City and the trustee then agreed to settle the entire hostile work environment claim, conditional on the district court's dismissal with prejudice of this case. The district court then granted the City's motion for summary judgment, holding that Bercy lacked standing to pursue her claim.[2] We have jurisdiction over Bercy's appeal under 28 U.S.C. § 1291. We review a summary judgment order de novo. *Cusano v. Klein*, 264 F.3d 936, 945 n.3 (9th Cir. 2001).

## II.

Under the Bankruptcy Code, "all legal or equitable interests of the debtor in property as of the commencement

---

[2] We do not reach the district court's alternative holding that Bercy's failure to disclose her discrimination claim in her Chapter 7 petition judicially estopped her from bringing it. *See EEOC v. BNSF Ry. Co.*, 902 F.3d 916, 928 n.12 (9th Cir. 2018).

of [a bankruptcy] case" belong to the bankruptcy estate created at the debtor's filing of a bankruptcy petition. 11 U.S.C. § 541(a)(1). A claim belonging to the debtor at the time of the bankruptcy filing is such a property interest. *See Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986) ("The scope of section 541 is broad, and includes causes of action."). Ordinarily only the bankruptcy trustee, "the representative of the estate" and the real party in interest in a suit on the estate's claims, has "capacity to sue" on the estate's behalf. 11 U.S.C. § 323(a)–(b). The debtor lacks prudential standing to do so. *See Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004).

Bercy's hostile work environment claim is based on conduct that occurred both before and after she filed her bankruptcy petition. The parties agree that a claim based on conduct before the petition, and any damages resulting from that conduct, belong to the bankruptcy estate. This appeal is about whether Bercy still may pursue her claim and seek damages only for conduct after the petition.

## A.

Whether Bercy may pursue her discrimination claim depends on when that claim accrued. Only the bankruptcy trustee may bring claims that accrued before a debtor filed for bankruptcy because those claims are "interests of the debtor in property as of the commencement of [a bankruptcy] case." 11 U.S.C. § 541(a)(1); *see also id.* § 323. In other words, if "[a]n action could have been brought" by a plaintiff-debtor at the time she petitioned, it belongs to the bankruptcy estate. *Cusano*, 264 F.3d at 947.

Bercy could have brought her hostile work environment claim before she began her bankruptcy case. By the time she

filed for bankruptcy, Bercy knew about her coworker's alleged harassment, and had reported that harassment to her direct supervisor at least once. Indeed, one reason Bercy filed for bankruptcy was to escape her coworker's ongoing harassment. And she even knew at the time she filed for bankruptcy that the harassment was illegal. So, by then, she knew of the injury underlying her claim. *See Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1050–51 (9th Cir. 2008). Because her hostile work environment claim could have been brought by the time she filed her bankruptcy petition on April 11, 2018, it facially belongs to the estate. *See Cusano*, 264 F.3d at 947.

## B.

Bercy argues, however, that because her hostile work environment claim includes incidents that occurred after the bankruptcy filing date, she is personally entitled to pursue damages for the post-petition conduct. But under 11 U.S.C. § 541(a)(6), subject to an exception not relevant here, "[p]roceeds, product, offspring, rents, or profits of or from property of the estate" also belong to the bankruptcy estate. Under that provision, the estate includes post-petition property "sufficiently rooted in the prebankruptcy past." *Rau v. Ryerson (In re Ryerson)*, 739 F.2d 1423, 1426 (9th Cir. 1984) (quoting *Segal v. Rochelle*, 382 U.S. 375, 380 (1966)). Bercy's hostile work environment claim is so rooted because Title VII "does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing *and liability*." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002) (emphasis added).

As in *Morgan*, "the acts about which [Bercy] complains are part of the same actionable hostile work environment

practice," *id.* at 120, which began well before she filed for bankruptcy. The accrual of her claim before her petition, and the continuation of the underlying conduct after the petition, sufficiently roots her resulting claim in the prebankruptcy past. Hostile work environment claims are by their nature "based on the cumulative effect of individual acts." *Id.* at 115. Bercy's complaint alleges "ongoing and constant" harassment as a single claim. When a plaintiff pleads a continuing course of conduct that straddles the filing of a bankruptcy petition, and that conduct gives rise to a single claim that accrued before the petition, the sweep of § 541(a)(6) brings the entire claim within the bankruptcy estate. Therefore, only the trustee had standing to bring Bercy's hostile work environment claim.

## C.

Contrary to Bercy's argument, *O'Loghlin v. County of Orange*, 229 F.3d 871 (9th Cir. 2000), does not dictate a different conclusion. *O'Loghlin* is the inverse of this case. In *O'Loghlin*, an employer-debtor tried to use its bankruptcy filing to shield itself from liability for discriminatory conduct that began before and continued after the debtor's discharge in bankruptcy. *Id.* at 874. *O'Loghlin* considered whether a *creditor's* claim was discharged as *debt*, *see id.* at 873–75, not, as here, whether a *debtor's* claim was included in the estate as *property*.[3]

These two cases thus involve different bankruptcy provisions and purposes. For a creditor like the plaintiff in *O'Loghlin*, a bankruptcy plan for a debtor-municipality

---

[3] *O'Loghlin* involved a Chapter 11 plan filed by a municipality; we considered in *O'Loghlin* only the discharge provision of Chapter 9. *See* 229 F.3d at 874 & n.2.

discharges "all debts as of the time when . . . the plan is confirmed." 11 U.S.C. § 944(b). Under that provision, even if pre- and post-discharge conduct constitute a single continuing violation, someone suing a municipal debtor can recover damages incurred after the date of discharge. Such a debt does not exist "as of the time . . . when the plan [was] confirmed." *O'Loghlin*, 229 F.3d at 874 (first alteration in original) (quoting 11 U.S.C. § 944(b)).

*O'Loghlin* stresses that absolving the defendant-debtor of liability for post-discharge conduct would "doubly disadvantage" a creditor. *Id.* at 875. First, by operation of the discharge resulting from a bankruptcy filing outside of her control, the creditor cannot recover for pre-discharge violations. Second, having been denied recovery for pre-discharge violations, the creditor also would be denied recovery for post-discharge violations simply because they were part of the same continuing course of conduct. The creditor and alleged victim would recover nothing, while the debtor and alleged perpetrator would get off scot-free. The Bankruptcy Code provides a "fresh start" to the defendant-debtor at discharge, but not "a continuing licen[s]e to violate the law." *Id*.

In contrast, the estate created at the filing of a bankruptcy encompasses all the debtor's current property, including prospective interests in "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." 11 U.S.C. § 541(a)(6). As explained above, these interests include "causes of action," *Sierra Switchboard Co.*, 789 F.2d at 707, that are "sufficiently rooted in the prebankruptcy past," *Ryerson*, 739 F.2d at 1426.

It would unfairly "doubly advantage" a debtor like Bercy to allow her to personally recover damages for conduct that

occurred after she filed for bankruptcy when that conduct forms part of a single claim she could have brought before she filed for bankruptcy. First, she would receive the advantage of a "fresh start" by discharging her debts. But she receives that discharge only after placing her property in the bankruptcy estate. Second, she would still retain the ability to recover, in part, on the accrued claim. But that claim was part of the estate she put into bankruptcy so that she could discharge her debts. Bercy's fresh start—the discharge of her debts—is made possible because her property, including her entire claim, forms a bankruptcy estate out of which creditors may be paid. *See* Jonathon S. Byington, *The Fresh Start Canon*, 69 Fla. L. Rev. 115, 122 (2017) ("[A] historical purpose of the fresh start was to increase assets available for distribution to creditors by giving debtors a discharge to incentivize them to cooperate."). And the alleged perpetrator can be held accountable by the trustee's pursuit of the claim. Prohibiting a debtor from suing for claims that accrued before her petition because they are property within bankruptcy, like allowing a creditor to sue for incidents that occurred after discharge because they are debt outside of bankruptcy, "threatens neither the letter nor the spirit of the bankruptcy laws." *O'Loghlin*, 229 F.3d at 875.

## III.

Because the discriminatory acts Bercy alleges in her complaint constitute "one unlawful employment practice" that accrued before she petitioned for bankruptcy and encompasses conduct both before and after her petition, *Morgan*, 536 U.S. at 118, her claim belongs to the estate.

Accordingly, she lacks standing to pursue it. *See Ryerson*, 739 F.2d at 1426.[4]

**AFFIRMED.**

---

[4] We do not decide whether property of an estate would include a hostile work environment claim where harassing incidents occurred before and after the bankruptcy petition but the complaint alleges only post-bankruptcy incidents.